```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


UNITED STATES OF AMERICA,        )
                                 )
         Plaintiff,              )
                                 )
              v.                 )    No. 4:09CR801 CEJ
                                 )              (FRB)
MATTHEW A. SUSCHANKE,            )
                                 )
         Defendant.              )
```

**MEMORANDUM,
REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

Defendant Matthew Suschanke's Motion To Suppress Statements
(Docket No. 39)

Testimony and evidence was adduced on the defendant's motion at a hearing before the undersigned.  A written transcript of the hearing has been filed with the court (See Docket No. 55). Post hearing memoranda were filed by the parties.  (See Docket Nos. 56 and 59).  From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact:

### Findings of Fact

In early 2009, Detective Michael Spreck of the St. Louis Metropolitan Police Department began an investigation into the possible possession of pornography by a person or persons using a computer.  The investigation began when Detective Spreck received information from another law enforcement officer that it had been

learned in an undercover operation that child pornography was being obtained and or offered in an internet peer group by a person using a computer and that through further investigation it was learned that the IP address of the computer was listed to a person residing at 156 Cahokia Street in the City of St. Louis, Missouri. The investigation further revealed that the video files possessed/offered through the computer were video images known to law enforcement officials to be child pornography. Through investigation officers also learned the names of several persons residing at 156 Cahokia Street, including Alan and Matthew Suschanke, the defendants in this case. The officers sought and obtained a warrant to seize and search computers located at 156 Cahokia Street.

On May 3, 2009, at approximately 12:00 Noon officers from the police department, including Detective Spreck, went to 156 Cahokia Street for the purpose of executing the search warrant, which they did. During the execution of the warrant they found and seized several computers at the residence. During the execution of the warrant the officers spoke with Alan Suschanke who told the officers that there was child pornography on the computers in the residence.

Detective Spreck, while still at the residence, also spoke with Matthew Suschanke. Matthew Suschanke is the son of Alan Suschanke. Prior to asking questions of Matthew Suschanke Detective Spreck advised Matthew Suschanke of certain constitutional rights, and specifically that he had the right to

remain silent; that anything he said could and would be used against him in court; that he had the right to an attorney and to have the attorney present during questioning; and that if he could not afford an attorney one would be appointed for him before questioning if he wished.  Detective Spreck advised Matthew Suschanke of these rights by reading them to him from a card.  (See Government's Exhibit 1).  Matthew Suschanke said that he understood these rights and then answered questions put to him by Detective Spreck.  Matthew Suschanke told Detective Spreck that he had seen child pornography on a computer located in the residence, but that he had deleted it from the computer files.

Alan and Matthew Suschanke were then placed under arrest and transported to the police station, arriving there at about 1:00 p.m. on March 3, 2009.  At the station the officers first interviewed Alan Suschanke.  Detective Spreck then interviewed Matthew Suschanke.  The interview of Matthew Suschanke began at about 3:30 p.m.  The interview began by Detective Spreck engaging in some preliminary conversation in which he told Matthew Suschanke the nature of the investigation and that it was focused on child pornography rather than adult pornography, and explained that a forensic examination would be made of the seized computers.  Detective Spreck characterized these initial conversations as "rapport building".

Detective Spreck then began audio tape recording the interview.  The initial, "rapport building", conversation was not recorded.  At the beginning of the audio recorded portion of the

interview Detective Spreck told Matthew Suschanke that "I have (or had) a search warrant to search your residence for possession of child pornography." Detective Spreck then stated "Right now I'm going to advise you of your rights, O.K., it's a precautionary measure, O.K." Detective Spreck then advised Matthew Suschanke of the same rights of which he had previously been advised at the residence, again by reading the rights to Matthew Suschanke from a card. Matthew Suschanke was asked if he understood these rights and he replied "Yes sir." Detective Spreck then began an interview of Matthew Suschanke which lasted about 40 minutes." (See Government's Exhibit 2 - Audio compact disc).[1]

Approximately one half hour later Detective Spreck began a second interview with Matthew Suschanke which was also audio tape recorded. There was conversation between Detective Spreck and Matthew Suschanke between the first and second interviews which was not recorded. At the beginning of the audio recording of the second interview Detective Spreck reminded Matthew Suschanke that he had been advised of his rights previously, and Detective Spreck again read to Matthew Suschanke the same rights which he had read previously. Matthew Suschanke was then again asked if he understands the rights and responded "Yes sir."

---

[1]The quality of the audio recording submitted in evidence, particularly as to the first interview of Matthew Suschanke, is not good. There is significant background noise. One must strain to hear the response of Matthew Suschanke to questions asked by Detective Spreck. The audio quality of the second interview is, in comparison, somewhat better.

During the second interview Detective Spreck displayed to the defendant a video file which a forensic examination had discovered on one of the computers seized from his residence. The video file apparently depicted child pornography and Matthew Suschanke was questioned about whether he had downloaded the video to the computer. At some point Detective Spreck told Matthew Suschanke that Detective Spreck did not believe Matthew Suschanke was being truthful in their discussions. Detective Spreck also said that some of Matthew Suschanke's answers and explanations seemed inconsistent with other answers and explanations that he had given. Matthew Suschanke stated that he was just giving the answers that would make the officers "happy" and that the officers were trying to "put words in (my) mouth." Detective Spreck told Matthew Suschanke that the only thing he was seeking was the truth and that he did not want Matthew Suschanke to say things to "make (me) happy" and that the officers were not trying to put words in his mouth. This second interview lasted approximately 25 minutes. (See Government's Exhibit 2 - audio compact disc).

During both the first and second interviews Detective Spreck asked Matthew Suschanke if he would be willing to submit to a polygraph examination and Matthew Suschanke said that he would. Later that evening Matthew Suschanke underwent a polygraph examination. The polygraph examination lasted approximately three hours. The polygraph examination was audio and video taped in its entirety. (See Defendant's Exhibit 2).

At the hearing on the defendant's motion both Detective Spreck and defendant Matthew Suschanke testified concerning the matters at issue in the defendant's motion.

Matthew Suschanke testified that he was born on March 2, 1987, and was 22 years old at the time of the matters at issue. He graduated from Cleveland Naval Junior Academy High School in St. Louis. He is able to read and write. He held several jobs in the past. Matthew Suschanke testified that he suffers from ADHD (Attention Deficit Hyperactivity Disorder). He testified that he began taking medication to treat the condition in 1987, at age 9, but discontinued taking the medication in 2004 because it was no longer covered by his mother's insurance. He testified that he has never applied for disability benefits on account of any mental or physical disorder.

Matthew Suschanke testified that he had been up most of the night of March 2/3, 2009, and had very little sleep before the officers arrived at his residence. He testified that he told Detective Spreck in their general conversation before the first recorded interviewed that he was tired but that he agreed to proceed with the interview. He stated that no threats or promises were made to him prior to or during the first recorded interview.

Matthew Suschanke testified that between the first and second recorded interviews Detective Spreck confronted him saying he didn't believe Matthew Suschanke was being truthful and that Detective Spreck then kicked the chair on which Matthew Suschanke

was then sitting and yelled "Tell me the f*****g truth." In his testimony Detective Spreck denied that this had ever occurred.

Matthew Suschanke testified that after this incident of yelling and his chair being kicked that he stated that he wanted a lawyer but that his request was ignored. Detective Spreck testified that Matthew Suschanke at no time ever requested an attorney.

Matthew Suschanke testified that during the time between the first and second recorded interviews Detective Spreck told him that Detective Spreck had friends in ICE (Immigration and Customs Enforcement Agency) and that if Matthew Suschanke did not tell him the truth Detective Spreck would see that Matthew Suschanke's wife's application for a visa (to enter the United States) would be denied. Detective Spreck testified that in his conversations with Matthew Suschanke between the first and second interviews it was discussed between he and Matthew Suschanke that Matthew was married to a woman who lived in the Philippines; that Matthew sent money to his wife; and the circumstances as to how Matthew had met and married the woman. Detective Spreck denied that he ever made any threats to Matthew Suschanke that he would interfere with Matthew's wife's application for a visa.

Matthew Suschanke testified that during the time he was at the police station he asked to use the restroom and was allowed to do so. He testified he was also allowed to drink water and never requested that he be provided food to eat.

The testimony of Matthew Suschanke and Detective Spreck agreed in some respects and differed in others. The significant differences are set out above. To the extent it is necessary to resolve these discrepancies in order to render a decision on the issues raised in the defendant's motion, having seen and heard the testimony of both witnesses and having considered all matters which might reflect on their credibility, the undersigned does choose to credit the testimony of Detective Spreck.

## Discussion

In his motion to suppress statements the defendant avers that his statements were not voluntary in that the statements were coerced, made under duress, and induced by threats and promises by law enforcement officials, were made while the defendant was in custody and without his being advised of or waiving his constitutional (<u>Miranda</u>) rights. He also avers that he invoked his right to remain silent and to counsel, which was not honored.

In his post hearing supplemental memorandum the defendant points to evidence in the record which he claims supports these averments.

In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the Supreme Court held that before questioning a person in custody law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used against him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney one will be appointed for him. <u>Id.</u> at 478-79. The officials may

question the person after so advising him if the person voluntarily, knowingly and intelligently waives these rights and agrees to answer questions put to him by the officials. Absent such advice and waiver, statements obtained through interrogation of a person in custody are not admissible against the person at trial. Id. at 479.

As to the defendant's claim that he was not advised of his constitutional rights, the evidence does not support such claim. The evidence shows that the defendant was advised of his constitutional rights at his residence, and again prior to the first interview of the defendant, and again prior to the second interview of the defendant. The advice of rights given to the defendant complied in all respects with the requirements of Miranda. Further, the evidence shows that on each occasion when advised of these rights the defendant acknowledged that he understood these rights and answered questions put to him. This demonstrates a voluntary, knowing and intelligent waiver of these rights by the defendant. United States v. Ingram, 839 F.2d 1327, 1329 (8th Cir. 1988). Most significantly, during his testimony at the motion hearing the defendant admitted he was advised of the Miranda rights and admitted that he understood them and chose to answer questions.

As to the defendant's claim that he at some point invoked his right to remain silent and/or his right to counsel, and that these requests were ignored and not honored by the officers, the

undersigned finds that the credible evidence does not support these assertions.

The defendant asserts in his post hearing memorandum that he was tricked and cajoled into waiving his rights by the comments made by Detective Spreck at the beginning of the first interview that he has (or had) a warrant to search the defendant's residence for possession of child pornography and that the advice of rights was a precautionary measure. As to the statement to the defendant regarding the search warrant, the undersigned fails to comprehend how such a statement of fact could be considered trickery on the part of the officer. See, United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir.), cert. denied, 534 U.S. 1031 (2001). Further, the officer's statement that the advise of rights was a "precautionary measure", while troubling, does not render the defendant's waiver involuntary. At the hearing the defendant testified that his statements during the first interview were not induced by any promises or misrepresentations (Hearing Transcript at 52-53) and that he answered questions during the first interview because he felt he "had nothing to hide." (Hearing Transcript at 55). These comments by the officer taken in context of the totality of the circumstances did not serve to overbear the will of the defendant so as to render his waiver of rights involuntary. United States v. Makes Room, 49 F.3d 410, 414-415 (8th Cir. 1995).

The defendant claims that any statements made by him were not voluntary in that they were the result of coercion, duress,

force, intimidation, threats and promises by the interrogating officers.

In considering whether a confession was voluntary, the determinative question is whether the confession was extracted by threats, violence, promises (express or implied), such that the defendant's will was overborne and his capacity for self-determination was critically impaired. Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988) (citing Culombe v. Connecticut, 367 U.S. 568, 602 (1961)). This determination must be made by looking at the totality of the circumstances, including the conduct of the law enforcement officials and the defendant's capacity to resist any pressure. United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990), cert. denied, 502 U.S. 829 (1991). "Obviously, interrogation of a suspect will involve some pressure because its purpose is to elicit a confession." United States v. Astello, 241 F.3d 965, 967 (8th Cir.), cert. denied, 533 U.S. 962 (2001). However, there must be some showing that the officers engaged in some coercive conduct to overbear the will of the defendant. Id. "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'". Colorado v. Connelly, 479 U.S. 157, 167 (1986). "[O]fficers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices. None of these tactics render a confession involuntary, however,

unless the overall impact of the interrogation caused the defendant's will to be overborne."  United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005) (Internal citations and quotes omitted).

The evidence shows that the officers fully advised the defendant of his Miranda rights and that the defendant said that he understood these rights and then answered questions of the officers.  "Cases in which a defendant can make a colorable argument that a self incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare."  Berkemer v. McCarthy, 468 U.S. 420, 423 (1984).  "The fact that such warnings were given weighs in favor of a voluntariness finding."  United States v. Mendoza, 85 F.3d 1347, 1350 (8th Cir. 1996).

The defendant claims that the was induced to make the statements he made during the second interview by the conduct of Detective Spreck preceding the interview, namely the yelling and kicking of the chair on which the defendant sat, and of the threats made to interfere with the defendant's wife's visa application if he was not truthful.  Detective Spreck testified that none of these things occurred and the undersigned has found the detective's testimony to be credible, and these claims serve as no basis to suppress the defendant's statements.

The defendant submitted in evidence at the hearing a compact disc audio/video recording of the polygraph examination conducted on March 3, 2009.  The government represented to the

court and to the defendant that none of the statements made by the defendant during the polygraph examination will be offered in evidence against the defendant at the trial of the case. The defendant nevertheless asserts that the audio/video recording of the polygraph examination is evidence of the coercive nature of his entire contact with the police on March 3, 2009. All of the matters occurring during the polygraph examination occurred after the incriminating statements were made by the defendant to Detective Spreck and they can therefore have no bearing on whether the conduct of Detective Spreck overbore the will of the defendant. Moreover, nothing that occurred during the polygraph examination would lead the undersigned to conclude that Detective Spreck engaged in any conduct which caused the defendant's will to be overborne.

The evidence adduced at the hearing shows that the defendant was 22 years old at the time of the occurrences in question. He is a high school graduate. He is able to read and write. He has held jobs in the past. At the hearing he appeared to the undersigned to be at least of average intelligence. Although the defendant suffers from ADHD and has taken medication in the past for treatment of that condition, he has not taken medication in over four years and appears to have been able to function on an everyday basis without medication. Moreover, the defendant's mental condition does not render his statements involuntary, absent some evidence of coercive activity by the officers. Colorado v. Connelly, supra. "Although we believe that

personal characteristics such as those on which (the defendant) relies would be relevant to the voluntariness issue once coercive police activity has been shown, Connelly makes it clear that such personal characteristics of the defendant are constitutionally irrelevant absent proof of coercion brought to bear on the defendant by the State." United States v. Rohrbach, 813 F.2d 142, 144 (8th Cir.), cert. denied 482 U.S. 909 (1987)(Internal citations and quotes omitted). Although the defendant claimed to be tired due to lack of sleep he nevertheless agreed to proceed to be interviewed by Detective Spreck. Sleeplessness and fatigue do not automatically render a confession involuntary. United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008). There is no evidence that the defendant ever asked for food or drink or that he was denied the opportunity for food or drink. All of these things weigh in favor of a finding that the defendant's statements were voluntary and his will was not overborne.

## Conclusion

For all of the foregoing reasons the Defendant Matthew Suschanke's Motion To Suppress Statements should be denied.

Government's Motion For A Pretrial Determination Of The Admissibility Of Defendants' Statements Pursuant To Title 18, United States Code 3501 (Docket No. 29)

Defendant Alan Suschanke filed no pretrial motions and it is therefore recommended that the government's motion be denied as moot as to that defendant. See Patterson v. United States, 133

F.3d 645, 648 (8th Cir. 1998); United States v. Miller, 987 F.2d 1462, 1464 (10th Cir. 1993).

As to defendant Matthew A. Suschanke, for the reasons set out in the discussion of defendant's motion to suppress, it is recommended that the government's motion be granted.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Matthew Suschanke's Motion To Suppress Statements (Docket No. 39) be denied.

**IT IS FURTHER RECOMMENDED** that the Government's Motion For A Pretrial Determination Of The Admissibility Of Defendants' Statements Pursuant To Title 18, United States Code 3501 (Docket No. 29) be denied as moot as to defendant Alan Suschanke; and granted as to defendant Matthew A. Suschanke.

The parties are advised that they have until **June 7, 2010,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of May, 2010.